The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives. However, the Opinion and Award was amended in the Conclusions of Law and Award sections to correct the dates and number of weeks of disability and a legal cite.
************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Plaintiff suffered a compensable injury by accident on 9 March 1994.
4. Defendant-employer is a qualified self-insurer with Crawford and Company as the administrator.
5. Plaintiff's average weekly wage was $405.39 at all relevant times, yielding a compensation rate of $270.26.
6. The parties stipulated twenty-four (24) pages of medical records into the record.
7. The issue is the amount of benefits to which plaintiff is entitled.
**********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff, at the time of the hearing, was thirty-two (32) years old and married. Plaintiff was employed by defendant-employer in the laser tag position in the assembly department. Plaintiff was regularly employed in the second shift position. The laser tag job was temporary.
2. On 9 March 1994 while working in the laser tag position, plaintiff felt a pull in her back while turning a compressor which had been hung on a conveyor belt. Plaintiff was turning a compressor in order to attach a tag to it. The compressor was approximately two feet long, eighteen inches high and weighed approximately twenty pounds.
3. Following her compensable injury by accident, plaintiff went to see the company nurse and then worked the remainder of her scheduled shift. She returned to work the next day, 10 March 1994. Once again plaintiff complained of pain and was referred to the company physician, Dr. R. Michael Miller with Shelby Family Practice.
4. Dr. Miller examined plaintiff and arranged for x-rays to be taken. He diagnosed plaintiff with a muscle strain of the lower thoracic paravertebral muscle bundles. Dr. Miller did not write plaintiff out of work, but released her to return to light duty work for five days and restricted her from lifting over ten pounds. Plaintiff returned to a light duty position with defendant-employer at a part time assembly position. The work assignment involved lifting small aluminum parts weighing less than one-half pound each.
5. Plaintiff requested a second opinion and was referred, over Dr. Miller's objections, to Dr. John Hamrick at Cleveland Orthopaedic Associates. Dr. Miller, initially and throughout the time that he was treating her, had a very negative opinion of his patient. He criticized plaintiff for exaggerating symptoms and made derogatory comments regarding her attitude.
6. When Dr. Hamrick examined plaintiff on 21 March 1994, he diagnosed plaintiff with a significant strain of the back and he prescribed continued conservative management and treatment utilizing physical therapy and non-steroidal anti-inflammatory medications as well as heat and lineaments.
7. According to Dr. Hamrick, plaintiff subconsciously embellished somewhat her symptoms and needed reassurance about her ability to continue to recover. Dr. Hamrick also noted that plaintiff was frustrated with her continued pain. He recommended additional diagnostic tests such as an MRI screening and/or CAT scan to rule out a ruptured disc. The CAT scan and MRI revealed no abnormalities.
8. Dr. Hamrick recommended, in a letter to Dr. Miller, that plaintiff be kept out of work, stating, "I think she cannot return to work now."
9. On 4 April 1994 Dr. Miller wrote a letter to Dave Holland at defendant-employer's referring to plaintiff's difficulties as "this troublesome case". He went out of his way to negate the opinion of Dr. Hamrick regarding plaintiff's inability to return to work. Dr. Miller asserted in the letter that Dr. Hamrick's statement about plaintiff's not being able to return to work was really only a limitation on her returning to full work duties and did not preclude performing the "minor light duty that we had established". Dr. Miller also asserted that "This is not a conflict or violation of his instructions."
10. Plaintiff continued to suffer pain. She was evaluated by Dr. Michael D. Heafner with Charlotte Neurological Associates on 21 March 1994. Dr. Heafner diagnosed plaintiff with significant muscle strain of the back and recommended continued conservative treatment with pain medication, anti-inflammatories and physical therapy. In early April 1994 plaintiff underwent a short work hardening program at Cleveland County Physical Therapy which concluded on 4 April 1994. Dr. Heafner gave plaintiff a five percent permanent partial impairment rating to her back.
11. Plaintiff returned to work, Monday, 4 April 1994. Her only restriction was to refrain from lifting over twenty (20) pounds. Upon her release to work, plaintiff was no longer eligible to perform the light duty part-time position in the assembly department.
12. Plaintiff was offered a choice of three permanent jobs. Allegedly these were the only jobs available at the time. The three jobs were: the final run test machine position; a parts hanging job in the assembly department; and a valve installation position. Dr. Miller was asked to come to the plant to view the three jobs and to indicate whether or not they would be suitable for plaintiff. Although plaintiff desired to be present during the time the jobs were being demonstrated to Dr. Miller, she was denied the ability to participate.
13. In denying plaintiff any participation during the viewing of the jobs to be offered to her, defendant-employer prevented her from indicating how she would find it necessary to perform the jobs and whether or not she had any difficulty with the available positions.
14. The parts hanging job in the assembly department was not approved by Dr. Miller because it required lifting in excess of plaintiff's work restrictions.
15. Dr. Miller approved the valve installation position and the final run test machine position. The valve installation position involved the handling and installation of certain parts by bolting them to a compressor. The valves, or parts which plaintiff was required to lift, weighed at least twenty pounds and she was required to lift this amount of weight many times repetitively during the day. This job was unsuitable for plaintiff with her medical restrictions.
16. Both the final run test machine and valve parts used in the installation job contained oil that was a health hazard to plaintiff. In 1993 plaintiff had been exposed to the oil utilized by the final run test machine and in the valve installation position, and she had developed a dermatitis problem which necessitated her being moved to another position.
17. Plaintiff chose to take the valve installation job because it involved the least amount of exposure to oil and because she wished to do all she could to secure her seniority and to maintain her job with defendant-employer. Plaintiff reported to the job and attempted to work as scheduled on 4, 5, 6, and 7 April 1994. She had great difficulty in performing the repetitive lifting tasks.
18. After she reported to Doug Camp on 6 April 1994, and told him she could not do the required lifting, she was told to go home. Plaintiff requested that she perform the valve installation job while Dr. Miller viewed the process. This request was refused and plaintiff was required to leave work.
19. On 7 April 1994 when plaintiff reported to work, she was asked to leave her work area and go to the office to wait for Dave Holland. Plaintiff discussed her work with Dave Holland. She requested that she be given another opportunity to work for defendant-employer and to have another job which she could perform since she had been unable to lift the valves. However, Dave Holland dismissed plaintiff without allowing her to make a complete statement.
20. Plaintiff had never refused to do a job before with defendant-employer. She had been praised for operating the laser tag machine accurately and had no dermatitis problems at that job position. However, she was told that the laser tag position was unavailable in April 1994.
21. Plaintiff also had a scheduled appointment for physical therapy on 8 April 1994. Dave Holland canceled this appointment unilaterally while plaintiff was at the therapy office. The treatment had been scheduled by Dr. Miller.
22. There was an additional position open at defendant-employer's company in the shipping department. Plaintiff believed she was qualified and had sufficient level of seniority to occupy the job. However, plaintiff was told she did not have sufficient seniority and she was denied an opportunity to apply for the position in the shipping department.
23. Plaintiff was justified in refusing to perform the final fun test machine position which exposed her to oil which had caused her dermatitis problems and also justified in refusing to work at the valve installation job which she could not physically handle.
24. Plaintiff was inadvisably terminated by defendant-employer on 7 April 1994 for allegedly failing to report to work after being released by her treating physician, Dr. Miller.
25. After her termination plaintiff was incapable of locating work and earned no wages at any time from 8 April 1994 through 5 August 1994, a total of 17 1/7 weeks.
26. On 6 August 1994 plaintiff was hired at a Sub-Station restaurant, where she earned a total of $1,230.12 over a period of 52 2/7 weeks.
27. Plaintiff was hired by Bi-Low on 8 August 1995 at a wage of $186.00 per week. On 15 December 1995, plaintiff's salary was increased to $196.00 per week. At the time of the hearing before the Deputy Commissioner on 15 February 1996, plaintiff was still employed at Bi-Low and earning $196.00 in wages per week.
28. Plaintiff received no workers' compensation benefits for temporary partial disability from defendant-employer.
************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on 9 March 1994, when she strained muscles in her back while turning a compressor as she worked at the laser tag position at defendant-employer's assembly department. N.C. Gen. Stat. §97-2 (6).
2. Plaintiff was justified in her refusal to work at either of the two jobs at defendant-employer's approved by plaintiff's treating physician. Plaintiff's allergy to machine oil which had previously necessitated a change in her job with defendant-employer, prevented her from taking one position. In addition, plaintiff was unable to do repetitive lifting at or near her twenty pound restriction level as required by the valve installation position. Due both to her dermatitis condition and to her inability to do repetitive lifting at her limitation level, plaintiff was justified in refusing to perform at either of those jobs. N.C. Gen. Stat. § 97-32.
3. Since plaintiff was incapable of earning wages of any kind due to the 9 March 1994 injury from 8 April 1994 through 5 August 1994, a total of 17 1/7 weeks, plaintiff is entitled to receive temporary total disability compensation at her weekly compensation rate of $270.26, from 8 April 1994 through 5 August 1994. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to receive temporary partial compensation benefits at the compensation rate of $270.26 during the 52 2/7 weeks time from 6 August 1994 through 7 August 1995 when she was working part-time at Sub-Station, subject to a credit for defendant in the amount of $1,230.12 plaintiff earned as wages over that time period. N.C. Gen. Stat. § 97-30.
5. Plaintiff is entitled to receive temporary partial disability compensation benefits at two-thirds of the difference between her average weekly wage of $405.39 prior to 9 March 1994 and her average weekly wage of $186.00 for the 18 3/7 weeks from 8 August 1995 through 14 December 1995 when she worked for Bi-Low earning an hourly wage of $4.65. N.C. Gen. Stat. § 97-30.
6. Plaintiff is also entitled to receive temporary partial disability compensation benefits at two-thirds of the difference between her average weekly wage of $405.39 and her weekly salary of $196.00 when she worked at Bi-Low after her salary was increased on 15 December 1995 and continuing at the appropriate rate as long as she remains partially disabled or until further order of the Commission. In any event, plaintiff shall not receive benefits for more than 300 weeks from the date of the injury on 9 March 1994. N.C. Gen. Stat. § 97-30.
************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall compensate plaintiff for 17 1/7 weeks of temporary total disability at a weekly compensation rate of $270.26 for the period from 8 April 1994 to 5 August 1994.
2. Defendants shall compensate plaintiff for 52 2/7 weeks of temporary partial disability at her compensation rate of $270.26 minus a credit for the $1,230.12 which plaintiff earned during this time period from 6 August 1994 through 7 August 1995 while working part-time while employed at the Sub-Station.
3. Defendants shall pay plaintiff two-thirds of her average weekly wage, or $270.26, minus two thirds of her average weekly wage of $186.00 for 18 3/7 weeks from 8 August 1995 through 14 December 1995 while she was working at Bi-Low. Defendants shall also pay plaintiff at the rate of $270.26 per week minus two-thirds of her average weekly wage of $196.00 for 50 1/7 weeks from 15 December 1995 until 15 February 1996. These amounts have accrued and shall be paid to plaintiff in a lump sum.
4. Defendants shall continue to pay plaintiff at the rate of $270.26 per week minus two-thirds of plaintiff's current average weekly wage from 16 February 1996 until the expiration of 300 weeks from the date of plaintiff's injury on 9 March 1994.
5. Defendants shall bear the costs.
This the 21st of August 1997.
 S/ _______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ __________ COY M. VANCE COMMISSIONER
S/ _________________ WANDA BLANCHE TAYLOR DEPUTY COMMISSIONER
DCS:jmf